The STATE of Ohio, Appellee,

v.

HOWE, Appellant.

[Cite as *State v. Howe* (1989), 65 Ohio App.3d 540.]

Court of Appeals of Ohio,
Logan County.

No. 8–89–14.

Decided Dec. 8, 1989.

*Kim Kellogg–Martin,* for appellee.

*Hugh R. Tankersley,* for appellant.

RALPH D. COLE, JR., Judge.

This is an appeal from a judgment of conviction and sentence of the defendant by the Municipal Court of Bellefontaine for the offense of overloading a dump truck in violation of R.C. 5577.04(A)(2).

The defendant was arrested by a highway patrol trooper and charged with the offense. A "not guilty" plea was entered and a motion to suppress filed on the ground there had occurred an unconstitutional arrest which opened the door to the evidence sought to be suppressed. After a most abbreviated hearing, the trial court overruled this motion. Thereupon the defendant changed his plea to "no contest" and, on being found guilty, was duly sentenced. He now appeals from this judgment asserting a single assignment of error.

"The trial court erred in failing to suppress evidence arising from an arbitrary and random traffic stop of the appellant in violation of his rights under the Fourth and Fourteenth Amendments to the U.S. Constitution."

We note that no brief has been filed by the state.

The thrust of the argument which here concerns us is not directed, as it is in many cases, to the existence or non-existence of probable cause for an arrest. Here, so far as the record reveals, when the situation had advanced to the point of formal arrest, the evidence constituting probable cause may well have been available to the patrolman. Rather, here the objection goes to the action whereby the patrolman stopped the defendant, thereby making his vehicle subject to examination. The issue concerns the constitutional validity of this stop as constituting an unconstitutional seizure.

The transcript of evidence given at the hearing on the motion to suppress is quite brief. First, there is a stipulated statement:

"Ms. Martin: Yes. The stipulated statement of fact would be that the initial stop made by Trooper Alexander in this particular case was made for the sole purpose of a safety inspection."

The parties entered no further evidence. However, the trial court chose to interrogate the trooper and summarized the issue before him in these words:

"THE COURT: But had it not been for the safety, the safety stop, there would never have been a weighing; is that correct? So this case does hinge upon whether or not it was legal to stop him for a routine safety check."

The trooper thereupon volunteered the following:

"TROOPER ALEXANDER: If I could have been behind him—I had another truck stopped when I saw him coming down the road. And I initially stepped out and motioned him over; he could not get stopped. When he went by, I saw he did not have a use tax decal. And when he went by then, he did pull over. But after he passed me, I could see his load. And I would have stopped him.

"THE COURT: But your purpose for waving him down was just for purposes of a routine safety check; is that what you're saying?

"TROOPER ALEXANDER: That's correct.

"THE COURT: Pardon?

"THE COURT: And had you not done that, you wouldn't have noticed any problem in getting, in him stopping his vehicle; is that correct?

"MS. MARTIN: Had you not waved him down—

"TROOPER ALEXANDER: He would have went on by, no."

This, if it be evidence, is all the factual material before the court.

Based, then, solely upon this stipulation and the brief statement of the trooper, the trial court determined that the stop was proper and the motion was overruled.

It is our conclusion that the trial court was in error, that the trooper, on the facts before him, had no constitutional justification for stopping the defendant, and that the judgment from which appeal is taken must be reversed.

We would first note that there is no assertion that there were any facts known or apparent to the trooper to justify an investigatory stop. In *State v. Wells* (1983), 11 Ohio App.3d 217, 11 OBR 340, 464 N.E.2d 596, it is said:

" * * * [I]t is well established that a full blown arrest cannot be justified on anything less than probable cause. * * * The trial court was correct in concluding that the statutory requirement of 'reason to believe' and the constitutional concept of probable cause are not the same.

"However, R.C. 4513.33 would not survive constitutional scrutiny if 'reason to believe' permitted stops to be made in anything less than what the Fourth Amendment to the Federal Constitution sets out as a 'minimum standard.' 'Reason to believe' is, therefore, tantamount to 'reasonable suspicion' as that concept has evolved and come to be understood since its inception in *Terry v. Ohio* (1968), 392 U.S. 1 [88 S.Ct. 1868, 20 L.Ed.2d 889] * * *."

Thus there must be at least an articulable and reasonable suspicion to justify a stop. *State v. Goines* (1984), 16 Ohio App.3d 168, 16 OBR 178, 474 N.E. 1219; *Delaware v. Prouse* (1979), 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660.

In this latter case the majority opinion of the United States Supreme Court states:

"Accordingly, we hold that except in those situations in which there is at least articulable and reasonable suspicion that a motorist is unlicensed or that an automobile is not registered, or that either the vehicle or an occupant is otherwise subject to seizure for violation of law, stopping an automobile and detaining the driver in order to check his driver's license and the registration of the automobile are unreasonable under the Fourth Amendment. This holding does not preclude the State of Delaware or other States from developing methods for spot checks that involve less intrusion or that do not involve the unconstrained exercise of discretion. Questioning of all oncoming traffic at roadblock-type stops is one possible alternative. We hold only that persons in automobiles on public roadways may not for that reason alone have their travel and privacy interfered with at the unbridled discretion of police officers. The judgment below is affirmed."

Although it is clear that roadside checks, both of license, registration and safety, may be made, to be considered an exception to the minimum standard of an articulable reasonable suspicion, there must be more than an arbitrary choice of a vehicle by a police officer. There must be some formal establishment of a check point or roadblock location, or the establishing of certain standards for choice.

In *State v. Salmon* (Feb. 2, 1989), Clark App. Nos. 2455, 2459, 2460 and 2462, unreported, 1989 WL 8439, it was said in affirming the judgment of conviction:

"In the cases before us the stops were neither random nor were they made at a designated check point.

"The evidence is overwhelming that the primary purpose of the stops was to weigh the trucks."

In the present case, there is no evidence of any reason the defendant was caused to stop other than the unbridled discretion of the police officer. There was no evidence a check point had been established, nor any evidence as to standards for operation of such a check. The evidence simply establishes that the officer waved the truck to stop, off the highway, for the sole purpose of a safety check.

The burden is upon the state to show that the stop was such as to be encompassed by one of the exceptions to the Fourth Amendment's warrant requirement. Here nothing establishes the existence of an articulable and reasonable suspicion of criminal activity prior to the stopping of the truck. Moreover, the evidence is wholly insufficient to establish any "check point"

exception within the parameters established by *Delaware v. Prouse, supra,* or any standard limiting the arbitrary and unbridled discretion of an arresting officer. Since the state failed to file a brief in this appeal and was denied for that reason oral argument, this appeal is considered in accordance with the principles set forth in App.R. 18(C).

*Judgment reversed*
*and defendant discharged.*

SHAW and THOMAS F. BRYANT, JJ., concur.

RALPH D. COLE, JR., J., retired, of the Third Appellate District, sitting by assignment.